IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville, October 30, 2001

## STATE OF TENNESSEE v. MARIO RICKY ORLANDO PRINTIS

**Appeal from the Circuit Court for Obion County**
**No. 0-224     William B. Acree, Jr., Judge**

_____

**No. W2000-03032-CCA-R3-CD  - Filed February 27, 2002**

_____

Mario Ricky Orlando Printis appeals from his convictions of driving under the influence and evading arrest. He questions the sufficiency of the evidence that he committed Class D felony evading arrest, as opposed to the Class E form of that crime, and he complains that the trial court sentenced him too harshly.  Because we are unpersuaded, we affirm the convictions and sentences imposed.  Due to an omission from the DUI judgment form, however, we modify that judgment to correspond with the lower court's pronouncements at the sentencing hearing.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

David L. Hamblen, Union City, Tennessee (at trial), C. Michael Robbins, Memphis, Tennessee, and Kevin McAlpin, Dresden, Tennessee (on appeal), for the Appellant, Mario Ricky Orlando Printis.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; J. Scott McCluen, District Attorney General; and James Cannon, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Procedural History

The defendant was charged in a five-count indictment with two counts of driving under the influence, Class D felony evading arrest, conspiracy to possess .5 gram or more of cocaine with intent to deliver or sell, and possession of .5 gram or more of cocaine with intent to deliver or sell.  He pleaded guilty to one count of driving under the influence, and one count was dismissed. He also pleaded guilty to evading arrest but left for the jury's determination the question whether he committed the Class E or Class D form of the offense.  He had no sentencing arrangement pursuant to his guilty pleas.

The defendant was tried with two co-defendants. The jury acquitted the defendant of the drug charges but returned a verdict of guilt of Class D evading arrest. The jury convicted one of the two co-defendants of cocaine possession and acquitted him of conspiracy, and it acquitted the other co-defendant of both possession and conspiracy. The trial court sentenced the defendant to eleven months, 29 days, 100 percent of which was to be served in the county jail, for driving under the influence. The court also imposed a Range I, four-year sentence for evading arrest, with the first year to be served in the county jail and the remaining three years to be served in the Community Corrections program. Following an unsuccessful motion for new trial, the defendant filed this appeal.

## Facts

In the light most favorable to the state, the evidence at trial demonstrated that on March 13, 2000, Randy O'Dell of the Union City Police Department was on patrol when he noticed a car weaving slightly and traveling at 30 miles above the speed limit. He stopped the vehicle and talked to its driver, the defendant, who was nervous and shaking. Officer O'Dell smelled alcohol. The defendant provided his driver's license, but he did not comply with Officer O'Dell's two requests to step outside the car. When Officer O'Dell reached for the defendant's car door, the defendant fled in the vehicle. Officer O'Dell chased the defendant, and he estimated that the pursuit reached speeds of approximately 60 miles per hour. A co-defendant, however, estimated the top speeds at 70 to 75 miles per hour. Officer O'Dell engaged the blue lights and spotlights on his vehicle, but the defendant did not stop. A sergeant from the police department eventually instructed Officer O'Dell to discontinue the pursuit for safety reasons.

According to the defendant's co-defendants, both co-defendants expressed their desire to get out of the car during the chase. They were fearful for their safety, and one testified, "I thought we was fixing to die." The co-defendants were unable to get out of the car until the defendant ran off the road into a ditch. They walked away from the scene, but the defendant stayed with his car and was able to continue driving it.

A few minutes later, Officer Tack Simmons spotted the defendant's vehicle after having heard a description of it on his police radio. He followed the car at a high rate of speed, and although he had his emergency equipment activated, the defendant did not stop. The defendant ran a red light, driving around another vehicle that was stopped at the light. During the chase, Officer Simmons observed other vehicles in the opposite lane of traffic. The defendant stopped after about one mile. Officer Simmons testified that the defendant's blood alcohol level was .12.

Officers Moran and Duncan of the Union City Police Department responded to instructions that they go to a certain location and look for two individuals on foot. They did so, and they found the defendant's two co-defendants. Officer Moran observed one of the two co-defendants squatting down near a bridge, and he believed this individual was hiding something. The two suspects were detained, and a search of the bridge area yielded 189.6 grams of cocaine base.

The defendant Printis presented no proof to rebut the state's evidence. In their cases-in-chief, both of the co-defendants attempted to shift culpability for the cocaine to Printis. One co-defendant claimed that Printis had taken something from his pants pocket and thrown it out the window of the car during the chase. The other co-defendant testified that although he did not see whether the defendant threw something from the car during the chase because he was watching the police car behind them, he did notice a plastic bag sticking out of the defendant's right pants pocket when Printis was in the process of providing his license to Officer O'Dell.

The state presented rebuttal evidence that the co-defendant who disavowed having seen Printis toss anything from the car had given a prior statement in which he claimed to have seen the defendant throw a plastic bag out the car window during the chase.

After the defendant was acquitted of the drug-related charges, the court conducted a sentencing hearing for his DUI and evading arrest convictions.

## Sufficiency of the Evidence

Printis challenges the jury's finding that he was guilty of Class D felony evading arrest, rather than the lesser-included offense of Class E felony evading arrest.

The statute defining the offense of evading arrest provides, "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1) (1997). This offense is a Class E felony. *Id.* § (b)(3). However, if "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties," the offense is a Class D felony. *Id.* § (b)(2), (3).

Thus, the question in this case is whether the defendant's actions posed a risk of death or injury to others. We hold that they did. According to the testimony of Officer Simmons, there were other cars on the road during the high-speed chase. The defendant failed to yield to the flashing blue lights and spotlights on the police vehicles which pursued him. The defendant was legally intoxicated, weaving, and at one point, lost control of the car. Fortuitously, the defendant's conduct did not result in any actual bodily harm to any of those whose safety was threatened by it. However, the evidence sufficiently supports the jury's finding of "risk of death or injury to innocent bystanders or other third parties."

## Sentencing

The defendant's second appellate issue questions the propriety of the sentences imposed for both the felony and the misdemeanor convictions. The trial court sentenced the defendant to serve eleven months and 29 days of jail confinement at 100 percent service for his misdemeanor DUI conviction. For the Class D felony evading arrest conviction, the trial court imposed a four-year sentence with the first year to be served in the county jail and the remaining

three years to be served in the Community Corrections program. The trial court ordered the two sentences to run concurrently.

The essence of the defendant's sentencing complaint is that he was sentenced harshly as a result of the trial court's improper consideration of the state's evidence that he was guilty of a drug offense, even though the jury acquitted him of the drug charges. However, he does not challenge the length of the effective four-year sentence. Rather, he claims that the proper manner of service of this sentence would have been one which allowed for probation with "a reasonable term" of Community Corrections as a condition to probation, following service of the 48-hour mandatory minimum confinement period for DUI.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. *See* Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

## A.     Evading Arrest - Felony Sentencing

We first consider the propriety of the manner of service of the defendant's four-year sentence for the Class D felony of evading arrest.

In felony sentencing, the trial court has an affirmative duty to state on the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. §§ 40-35-209(c), - 210(f) (Supp. 2000); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999).

In making a felony sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. § 40-35-210(a), (b) (Supp. 2001); Tenn. Code Ann. § 40-35-103(5) (1997); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App.1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (1997). However, a defendant who commits "the most severe offenses, possess[es] a criminal histor[y] evincing a clear disregard for the laws and morals of society, and [has failed] past efforts at rehabilitation" does not

enjoy the presumption. *See id.* § 40-35-102(5), (6); *State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. *Id.* § 40-35-103(5). Sentencing issues are to be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The defendant in this case enjoys the presumption of favorable candidacy for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, he is eligible for probation. *See* id. § 40-35-303(a) (Supp. 2001). Unlike the presumption of favorable candidacy for alternative sentencing in general, a defendant bears the burden of demonstrating the suitability of probation, in particular. *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). To meet that burden, the defendant must show that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Id.* at 456 (citation omitted). In that regard, the trial court appropriately considers the defendant's candor and credibility, or lack thereof, as indicators of his potential for rehabilitation. *See, e.g., State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999), *perm. app. denied* (Tenn. 2000); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

The trial court was heavily influenced by the defendant's denial at sentencing of any involvement in the drug trade, which testimony the court flatly rejected given several indicators to the contrary. The defendant testified to only sporadic employment during his adult life, and he had not worked for some time prior to the offenses. Nevertheless, he had over $400 in his possession when he was arrested. He claimed that he supported himself with the $200-300 per month his family gave him and that the money in his possession at the time of the offenses constituted proceeds from the sale of tire rims from his car. He also admitted to having purchased new rims for his tires that cost $700, and he claimed to have financed that purchase with the funds from his family.

Citing his acquittal on drug charges at trial, the defendant complains that the court should not have considered any evidence that he was a drug dealer in determining the correct sentence alternative. We disagree. Because the facts underlying those charges were intertwined with the facts of the conviction offenses, they constitute part of the "nature and characteristics of the criminal conduct involved," which are properly considered by the trial court at sentencing, including in the determination of "the appropriate combination of sentencing alternatives that shall be imposed on the defendant." *See* Tenn. Code Ann. § 40-35-210(b)(4) (Supp. 2001). Moreover, our supreme court has said that a sentencing court properly considers facts relative to an offense of which the defendant was acquitted if the facts are established by a preponderance of the evidence. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000). The lower court's consideration of the facts underlying the acquitted drug charges was not improper.

When the evidence presented at trial relative to the cocaine recovered at the bridge is considered in conjunction with the defendant's own testimony about his source of income at the sentencing hearing, it becomes clear that the defendant's prospects for rehabilitation and thereby, suitability for full probation, is dubious given the trial court's determination that his testimony was incredible. Thus, the trial court properly rejected full probation as a sentencing option. We therefore

reject the defendant's appellate claim that he should be sentenced to full probation conditioned on participation in the Community Corrections program for a "reasonable term" save the 48 hours he is required by statute to serve in jail for his DUI conviction.

In passing on the question of other alternatives, the lower court found that the state had not rebutted the defendant's favorable presumption for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6) (1997). Thus, it imposed a sentence consisting of confinement and Community Corrections. In determining whether the defendant has borne the appellate burden of overcoming the presumptive correctness of the sentence alternative imposed, *see id.* § 40-35-401(d), we return to his prospects of rehabilitation. *See id.* § 40-35-103(5) ("The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed.").

In that regard, we conclude that the defendant has not carried his burden of demonstrating the error of his sentence. We agree with the trial court that some measure of confinement was warranted and that the structured nature of the Community Corrections program provides a suitable alternative for this defendant who is without a significant employment history, and who albeit without a significant criminal history nevertheless appears to have been involved in serious criminal activity. Thus, we affirm the felony sentence imposed.

## B.    DUI - Misdemeanor Sentencing

We now consider the defendant's contention that he should be allowed to serve all but 48 hours of his misdemeanor DUI sentence on probation with a Community Corrections condition for a "reasonable term."

In contrast with felony sentencing, misdemeanor sentencing affords the sentencing court with greater flexibility. *See, e.g., State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. 1999), *perm. app. denied* (Tenn. 2000). The misdemeanor sentencing statute only requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302(d) (Supp. 2001); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998).

A separate sentencing hearing is not mandatory in misdemeanor cases, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. *See* Tenn. Code Ann. § 40-35-302(a) (Supp. 2001). Misdemeanor sentences must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. §§ 40-35-104 (1997), 40-35-302 (Supp. 2001); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75 percent of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve 100 percent of his sentence. *Palmer*, 902 S.W.2d at 393-94. In determining the percentage of the

sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to the sentencing. *Id.*

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. Tenn. Code Ann. § 40-35-302(d) (Supp. 2001). The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. *Id.* § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. *Id.* § 40-35-302(f). The governing statute provides that the trial court has continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. A convicted misdemeanant, unlike a convicted Class B, C, D, or E felon, has no presumption of entitlement to a minimum sentence. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

Moreover, the provisions of the Tennessee Community Corrections Act of 1985 are not applicable to misdemeanants. *See generally* Tenn. Code Ann. § 40-35-106 (1997). Thus, the only sentencing alternatives available to misdemeanants are the payment of a fine and some form of probation. *See id.* § 40-35-104(c) (1997).

The record in this case reflects that the sentencing court considered the pertinent principles and factors in arriving at its 100 percent service determination for the eleven month, 29 day misdemeanor sentence. The lower court found that a sentence more severe than normally required for a first offense of DUI was appropriate because of the aggravated circumstances of this case, to wit, the defendant was evading arrest with "a car full of dope" when he committed the DUI offense.[1] It is the defendant's burden on appeal to convince us that this is not the appropriate sentence. His arguments and citations have not overcome the presumptive correctness of the sentence imposed by the lower court.

Finally, we are compelled to correct an irregularity in the DUI judgment form. The lower court clearly announced its intent that the defendant serve 100 percent of the misdemeanor sentence; nevertheless, it failed to reflect this in its judgment. The general rule is that a judgment which does not reflect a percentage of service is interpreted as requiring zero percent service. *See id.* § 40-35-302(d) (Supp. 2001). An exception to that general rule is applicable when the sentencing court's clear intent is reflected in the transcript. *See Russell*, 10 S.W.3d 278-79. Such is the case here. We therefore modify the judgment in the DUI conviction to reflect 100 percent service. Otherwise, the judgment is affirmed.

---

[1] As we stated in the felony sentencing section above, consideration of the nature and characteristics underlying the offense is relevant to determining the manner of service of the sentence. *See* Tenn. Code Ann. § 40-35-210(b)(4) (Supp. 2001); *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

_____
JAMES CURWOOD WITT, JR., JUDGE